IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: DEBRA LEIGH HERRIN, | ) |
| | ) |
| Debtor - Appellee, | ) |
| | ) Bankr. Case No. 06-12249-WSS-13 |
| v. | ) |
| | ) CIVIL ACTION 07-0552-WS-C |
| GREENTREE - AL, LLC, | ) |
| | ) |
| Appellant. | ) |

**ORDER**

This matter is before the Court on the appeal of GreenTree - Al, LLC ("GreenTree") from the Bankruptcy Court's order denying GreenTree's Motion to Reconsider Order Overruling Objection to Confirmation. The parties have filed briefs in support of their respective positions, (Docs. 3-5),[1] and the appeal is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the ruling of the Bankruptcy Court is due to be affirmed.

GreenTree has a properly perfected security interest in a mobile home purchased by the debtor, which she uses as her residence. Under Alabama law, the mobile home is deemed to be personal property, not real property. (Doc. 3 at 6, 22).[2]

With certain exceptions, a plan under Chapter 13 "may ... modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real*

---

[1] In its citations to these briefs, the Court utilizes the pagination assigned by CM/ECF, not that assigned by the parties.

[2] Unity of ownership is one of Alabama's requirements for deeming a mobile home to be realty. Ala. Code § 32-8-30(c). GreenTree argues that the Bankruptcy Court erroneously found that the debtor does not own the land on which the mobile home sits. (Doc. 3 at 5, 9-10). Because GreenTree admits that the mobile home is personalty under Alabama law, (*id*. at 22), it is irrelevant whether the Bankruptcy Court erred in this respect.

*property that is the debtor's principal residence ....*"  11 U.S.C. § 1322(b)(2) (emphasis added).  GreenTree argues that it falls within the italicized, no-modification provision.  The Bankruptcy Court held otherwise and confirmed a plan that reduced GreenTree's claim through a procedure known as "cram down."  *In re: Herrin*, 2007 WL 1975573 (Bankr. S.D. Ala. 2007) (en banc).

      The no-modification provision of Section 1322(b)(2) requires that the creditor's security interest be in real property and that the real property be the debtor's principal residence.  GreenTree acknowledges that courts have "consistently required a security interest to exist in real property before the provision would apply."  It also acknowledges that whether a mobile home constitutes "real property" under this section has consistently been determined by resort to state law.  (Doc. 3 at 11, 20).  GreenTree argues, however, that a 2005 amendment introducing a statutory definition of "debtor's principal residence" eliminates the "real property" requirement.  The Bankruptcy Court rejected GreenTree's position, and that legal ruling is subject to review de novo in this Court.  *In re: Mosley*, 494 F.3d 1320, 1324 (11th Cir. 2007).

      Prior to the 2005 amendment, the term "debtor's principal residence" was not defined by the Code.  As one small part of the Bankruptcy Abuse Prevention and Consumer Protection Act, the term was defined as follows:

> The term "debtor's principal residence" --
>> (A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and
>> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

11 U.S.C. § 101(13A).

      It is clear from this definition that the mobile home in this case constitutes the "debtor's principal residence."  GreenTree argues that, because a mobile home constitutes a debtor's principal residence even if it is not attached to real property (and thus is not real property under the laws of most if not all states), "ALL mobile homes, regardless of

their state law classification as real or personal property, are protected by the anti-modification provision of section 1322(b)(2)." (Doc. 3 at 9).

The trouble with this argument is that Section 1322(b)(2) on its face carries two qualifications: first, that the security interest be in real property, and second, that the real property at issue be the debtor's principal residence. By defining "debtor's principal residence," Congress addressed the second requirement, but it left the first intact. Thus, however "debtor's principal residence" is defined, it must still constitute "real property" in order for the no-modification provision to apply. GreenTree devotes the bulk of its briefs to avoiding this result.

"The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006 ) (internal quotes omitted). This is so because "[t]he plain language is presumed to express congressional intent and will control a court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002). A court "should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result." *Silva*, 443 F.3d at 798.

"When the import of the words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (internal quotes omitted). "Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, we do not resort to legislative history to cloud a statutory text that is clear." *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (internal quotes omitted). "If the statutory language is not entirely transparent, we employ traditional canons of construction before reverting to legislative history ... [to] assist [us] in determining the meaning of a particular statutory provision by focusing on

their state law classification as real or personal property, are protected by the anti-modification provision of section 1322(b)(2)." (Doc. 3 at 9).

The trouble with this argument is that Section 1322(b)(2) on its face carries two qualifications: first, that the security interest be in real property, and second, that the real property at issue be the debtor's principal residence. By defining "debtor's principal residence," Congress addressed the second requirement, but it left the first intact. Thus, however "debtor's principal residence" is defined, it must still constitute "real property" in order for the no-modification provision to apply. GreenTree devotes the bulk of its briefs to avoiding this result.

"The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006 ) (internal quotes omitted). This is so because "[t]he plain language is presumed to express congressional intent and will control a court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002). A court "should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result." *Silva*, 443 F.3d at 798.

"When the import of the words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (internal quotes omitted). "Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, we do not resort to legislative history to cloud a statutory text that is clear." *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (internal quotes omitted). "If the statutory language is not entirely transparent, we employ traditional canons of construction before reverting to legislative history ... [to] assist [us] in determining the meaning of a particular statutory provision by focusing on

the broader, statutory context.  [citation omitted] ... If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine Congressional intent." *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (internal quotes omitted).

GreenTree first argues that the statutory language unambiguously eliminates the "real property" requirement.  (Doc. 3 at 13).  That is manifestly impossible because, by its terms, the 2005 amendment addresses only the definition of "debtor's principal residence," leaving the explicit  "real property" element untouched.  GreenTree admits as much when it insists that "one cannot ignore words and phrases contained in a statute when interpreting that statute."  (Doc. 5 at 6).  The express "real property" requirement cannot be ignored, and it dooms GreenTree's argument.

GreenTree next argues that Section 1322(b)(2) is ambiguous in light of Section 101(13A), opening the door to examination of the legislative history.  (Doc. 3 at 15).  It suggests that the Court in *In re: Shepherd*, 354 B.R. 505 (Bankr. E.D. Tenn. 2006), found such an ambiguity.  The *Shepherd* Court, however, did not purport to find any ambiguity in the statutory language; instead, it concluded that "the statutes cannot logically be read together" and thus "resul[t] in an absurdity."  *Id*. at 511.  The Court is aware of no court finding any ambiguity in the statutes, and the Court finds none.

Nor can the Court agree with the *Shepherd* Court's conclusion.  Imposing the definition of "debtor's principal residence" on Section 1322(b)(2) results only in the unstartling proposition that property can be a debtor's principal residence even if it is personalty, but it cannot be subject to the no-modification provision unless it is realty.  There is nothing absurd or illogical about such a state of affairs.  Indeed, it is precisely the result the cases reached before the insertion of Section 101(13A).[3]

---

[3]*See, e.g., In re: McNeill*, 2006 WL 1314333 at *2 (Bankr. M.D.N.C. 2006); *In re: Sizemore*, 2006 WL 3877748 at *1 (Bankr. E.D. Ky. 2006); *In re: Nowlin*, 321 B.R. 678, 683 (Bankr. E.D. Pa. 2005); *In re: Johnson*, 269 B.R. 246, 250 (Bankr. M.D. Ala. 2001).

To reach the legislative history of Section 101(13A) despite the absence of ambiguity or absurd result, GreenTree invokes the rule that the plain meaning of a statute does not control "in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989). (Doc. 3 at 15). Just as in *Ron Pair*, this is not the "rare case."

The complete universe of legislative history concerning Section 101(13A) — other than repetitions of its text verbatim — is the following:

> Sec[tion] 306. Giving Secured Creditors Fair Treatment in Chapter 13. ... Section (c)(1) amends section 101 of the Bankruptcy Code to define the term "debtor's principal residence" as a residential structure (including incidental property) without regard to whether or not such structure is attached to real property. The term includes an individual condominium or cooperative unit as well as a mobile home or manufactured home, or a trailer.

H.R. Rep. No. 109-31, at 72 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 140. While not verbatim, this is but a close paraphrase of the statutory definition. The only clue to congressional intent is contained in the title, which suggests generally that the provisions in Section 306 of the bill tend to favor secured creditors. Because it was only one of several changes wrought by Section 306, the description of that section does not necessarily apply to Section 101(13A). At any rate, a general desire to give secured creditors "fair treatment" can scarcely be said to "demonstra[te]" that Congress intended to eliminate the explicit "real property" requirement that it left untouched in Section 1322(b)(2). This is especially so since, had Congress truly wanted to remove the "real property" requirement, it could have done so with exceptional ease by merely redacting the word "real" or adding the words "or personal" in Section 1322(b)(2). It strains credulity to insist that a Congress intending to extend the no-modification provision to personalty would have rejected such an obvious and simple alteration of the critical statutory language in favor of creating a 33-word definition of "debtor's primary

residence" that leaves unchanged the separate "real property" requirement.

The remainder of GreenTree's arguments are makeweight and may be quickly rebuffed. The rules that a specific statute trumps a general, and that a later enactment trumps an earlier, apply only when "two statutes conflict with one another," (Doc. 3 at 16-17), and Section 101(13A) does not conflict with Section 1322(b)(2). The Court's construction does not render Section 101(13A) "meaningless," "superfluous," or "surplusage," (Doc. 3 at 14, 27; Doc. 5 at 5), because that section provides a definition of "debtor's principal residence" that was previously lacking and that must now be honored by all courts in determining what constitutes a debtor's principal residence. That the introductory phrase of Section 101 states its definitions "shall apply," (Doc. 3 at 18-19), makes them mandatory but does not alter their meaning or scope. That Section 1322(b)(2) was enacted in 1978 to "encourage the flow of capital into the home lending market," (*id*. at 27),[4] does not authorize a court to expand a later amendment beyond its terms because it believes the expansion will more fully realize that purpose.[5] To the extent that a statutory construction may be avoided if (a) it produces great inconvenience or inequality and injustice, and (b) there is a more reasonable interpretation available, (Doc. 5 at 9-10),[6] neither element is remotely satisfied here. Determining whether property is realty or personalty by resort to state law does not violate the uniformity requirement of the Constitution's Bankruptcy Clause, (Doc. 3 at 23-26), but only

---

[4]*See Nobelman v. American Savings Bank*, 508 U.S. 324, 332 (Stevens, J., concurring).

[5]*See also In re: LaFata*, 483 F.3d 13, 21 (1st Cir. 2007) ("The policy of encouraging mortgage lending does not require § 1322(b)(2) to be interpreted expansively.").

[6]*See Constantine v. United States*, 75 F.2d 928, 931 (5th Cir. 1935).

-6-

continues a practice approved by the Supreme Court.[7] State law is not preempted by Section 101(13A), (*id*. at 19-23), because that section leaves intact the "real property" requirement of Section 1322(b)(2), which is resolved by resort to state law.

The Court is not alone in holding that the no-modification provision of Section 1322(b)(2) continues to be limited to security interests in real property; the majority of bankruptcy courts addressing the issue have ruled likewise, and the Court has drawn on these opinions in crafting its own.  *See In re: Coleman*, 2007 WL 2376722 (Bankr. W.D. Mo. 2007); *In re: Manning*, 2007 WL 2220454 (Bankr. N.D. Ala. 2007); *In re: Herrin*, 2007 WL 1975573 (Bankr. S.D. Ala. 2007) (en banc); *In re: Cox*, 2007 WL 1888186 (Bankr. S.D. Tex. 2007).  A leading bankruptcy treatise is in accord.  8 Collier on Bankruptcy ¶ 1322.06[1][a] at 1322-30 (Alan N. Resnick et al. eds.,15th rev. ed.).  The Court respectfully rejects the minority view of *Shepherd* and like cases[8] for reasons adequately expressed above.

GreenTree remains convinced that Congress wanted to favor it and other mobile home lenders by extending the no-modification provision to personal property.  Congress, however, neither employed a tool equal to the task nor clearly expressed its intent in the legislative history.  The Court cannot correct this situation — if it needs correcting — by reading out of existence the explicit "real property" requirement of Section 1322(b)(2); the remedy, if any, lies with Congress.  *See In re: Bracewell*, 454 F.3d 1234, 1246 (11th Cir. 2006) ("If there are problems with the way a statute operates, Congress can alter the statute to eliminate those problems; we cannot.").

For the reasons set forth above, the ruling of the Bankruptcy Court is **affirmed**.

---

[7]*See Butner v. United States*, 440 U.S. 48, 54-55 & n.9 (1979) (utilizing state law to determine property interests does not violate the Bankruptcy Clause).

[8]*See In re: Davis*, 2007 WL 2245924 (Bankr. S. D. Ohio 2007) (agreeing with *Shepherd*); *cf. In re: Lunger*, 370 B.R. 649, 651 (Bankr. M.D. Pa. 2007) (concluding that Section 101(13A) "effectively broadened the definition of real property" in Section 1322(b)(2)).

DONE and ORDERED this 24th day of September, 2007.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE